UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY LOU STIEBLING and
ASTRAEA LTD.,

    Plaintiffs,

v.                              CASE NO: 8:02-cv-1344-T-23EAJ

BURMA TEAK, INC., d/b/a
TEAKDECKING SYSTEMS,

    Defendant.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Mary Lou Stiebling and Astraea Ltd. ("Stiebling") file claims against Burma Teak, Inc., d/b/a Teakdecking Systems ("Teakdecking") arising from a contract to install a teak deck on a sailing vessel. Stiebling asserts breach of contract, breach of an implied warranty of workmanlike performance, and negligence. A non-jury trial occurred on December 8-10, 2004, and (after some delay in preparation of the transcript and enlargements of time requested by the parties) proposed findings of fact and conclusions of law were filed by Stiebling (Doc. 92) on March 3, 2005, and by Teakdecking on March 30, 2005.

### Findings of Fact

In 1977, Stiebling purchased *Astraea*, a 41-foot sailboat built in 1971. (Vol. 1, p. 171.) *Astraea's* deck comprises layers of fiberglass encasing a plywood core. *Astraea* is equipped with a wooden mast and wooden deckhouse. (Vol. 1, pp. 49-52.)

*Astraea* remained in the water near California until 1997 or 1998, when Stiebling hired delivery of *Astraea* to Cut's Edge Marina in Palmetto, Florida. (Vol. 1, p. 177; Vol. 2, p. 19.) *Astraea* was poorly maintained between 1971 and 1998 and arrived at Cut's Edge Marina in poor condition. (Vol. 2, p. 20.) The wood on the deckhouse, deck, and mast appeared rotten and cracked. (Vol. 1, p. 242.) *Astraea* suffered numerous leaks. While in storage at the Cut's Edge Marina, the condition of *Astraea* worsened. (Vol. 1, p. 244.) No maintenance was hired or performed by Cut's Edge Marina, and the boat was left in the yard, exposed to the elements for many months (two years or more). (Vol. 2, pp. 19-20, Vol. 1, pp. 241-244, Vol. 1, p. 251, Vol. 2, pp. 112-113.) Rainwater penetrated the interior of the boat through the deteriorating deckhouse and remained standing in the hull of *Astraea*. (Vol. 1, p. 244.) For the safety of employees and nearby vessels, Cut's Edge Marina eventually drilled a drainage hole into the bottom of the hull, avoiding catastrophic structural failure of the overstressed hull by allowing accumulated water to drain from within *Astraea*. (Vol. 1, p. 243.)

Stiebling turned some attention to *Astraea* in 1999, aiming to restore her seaworthiness. (Vol. 1, p. 173.) Stiebling hired Bob Pitt to begin repairs to *Astraea*. (Vol. 1, pp. 183-84.) However, Mr. Pitt performed the repairs unsatisfactorily and contributed to *Astraea's* further decline. (Vol. 1, p. 58; Vol. 2, 48-51, 57, 62, 70-72.) Stiebling fired Mr. Pitt and hired Lynn Gregory, a lawn mower repairman, to attempt (or now, repair) the repairs. (Vol. 1, pp. 46-54, Vol. 2, pp. 68-69.)

Next, Stiebling contracted with Teakdeacking to install a new teak deck on *Astraea*. (Vol. 1, p. 197.) Teakdecking employs a unique method to install teak decks.

Installers traditionally lay teak decks by affixing each individual teak board to the deck with screws. (Vol. 2, 121.) However, employing a more advanced technique, Teakdecking measures the deck to create a comprehensive template, which is used at their factory to fabricate large sections of the teak deck. The sections comprise individual teak planks affixed to a "waterproof backing." (Vol. 2, p. 121.) Teakdecking affixes the pre-fabricated sections to the deck of the boat using screws and glue. (Vol. 2, pp. 121-141.)

Teakdecking typically preforms a limited surface inspection to test whether the deck appears solid and "fair." (Vol. 2, p. 125.) Teakdecking conducts no further inspection and relies upon the assurances of the owner as to the overall fitness of a boat. (Vol. 2, pp. 164-166.) Teakdecking inspected the deck of *Astraea* and informed Stiebling that *Astraea*'s deck needed repair before installing a teak deck. (Vol. 1, pp. 193-194.) Teakdecking's inspection revealed that the deck was not "fair" and that areas of the deck appeared "spongy," evidencing "delamination" due to a waterlogged or rotten wood core. (Vol. 1, pp. 193-194.)

At Stiebling's behest, Gregory replaced portions of the wood core that he believed were rotten. (Vol. 1, pp. 48-54.) Although not an accepted method to repair either delamination or a waterlogged core, Gregory pumped epoxy through the fiberglass to "fill in" the spongy areas of the wood core. (Vol. 1, pp. 50-51, 151-152.) Although producing the appearance of a solid and "fair" deck surface, Gregory's work failed to adequately restore the waterlogged wood core. (Vol. 1, p. 165; Vol. 2, p. 90.)

- 3 -

Relying on Gregory's preparation of the deck, Teakdecking began the installation of the teak deck on *Astraea* in April, 2002. (Vol. 2, p. 90.) Teakdecking produced a template and fabricated the large sections of the teak deck at the their factory. (Vol. 2, pp. 121-141.) In order to assure a clean and complete adhesion, Teakdecking arranged the sections on the deck and drilled the holes for the screws through the sections of teak deck and into the deck of the boat. (Vol. 2, pp. 131-136.) After drilling the holes, Teakdecking removed the large sections of deck and removed any debris resulting from the drilling. (Vol. 2, pp. 131-136.) Teakdecking then cleaned and dried the deck. (Vol. 2, pp. 131-136.) Teakdecking applied a thick layer of glue to the deck of the boat and arranged the large sections of the teak deck on the glue. (Vol. 3. P. 16.) Using the pre-drilled holes, Teakdecking screwed the teak deck in place. The glue sealed the screw holes. (Vol. 3, p. 16.)

The incident that spawned this action occurred after Teakdecking had drilled the holes but before Teakdecking affixed the deck with glue. (Vol. 1, pp. 62-64.) On Friday, April 12, 2002, Teakdecking's employees departed, leaving *Astraea* unattended and uncovered. (Vol. 1, p. 200.) That afternoon, a rainstorm wetted the deck of *Astraea* and left standing rainwater on the deck of the boat. (Vol. 1, pp. 201-202.) Stiebling and Gregory arrived at *Astraea* after both the rainfall and Teakdecking's departure and, concerned about the condition of the vessel, dried the deck. (Vol. 1, pp. 201-202.) Teakdecking returned to *Astraea* the next Monday to prepare the deck and continue installation of the teak deck.

To finish a teak deck installation, Teakdecking completes a "punch list" that includes entering the deckhouse and forecabin to trim any protruding screw, remove any glue that has dripped through the holes, and fill any visible drill hole. However, Stiebling refused to allow Teakdecking access to the boat after Teakdecking completed installation of the deck. (Vol. 2, p. 145.) Teakdecking was unable to preform some of the punch list items.

The design of the deck of *Astraea* includes covers for four hatches and a lazarette. After the installation, Stiebling complained to Teakdecking that the hatch covers and lazarette top were improperly designed and manufactured. (Vol. 1, p. 213-215, Vol 2, pp. 151, 199, 200.) Although Teakdecking agreed to replace or repair any unsatisfactory cover, Stiebling refused to approve a new design. (Vol. 2, pp. 199-202). Neither the hatch covers nor the lazarette top was replaced. (Vol. 1, pp. 215-218.)

Teakdecking manufactured the hatch covers and lazarette top in compliance with the contract and in a fashion customary in the yacht-finishing trade. (Def. Ex. 12A-12C.) Correctly installed, the seams and grain in the teak planks on the hatch covers and lazarette top conform with the seams and grain in the teak planks in the surrounding deck and produce the overall visual effect of a unified pattern of teak. The record reveals that the hatch covers and lazarette top that appear in the photographs introduced into evidence by Stiebling were incorrectly situated (placed on the wrong hatches) by the plaintiff rather than defectively designed or manufactured by Teakdecking. (Vol. 2, pp. 105-108; compare Plt. Ex. 30B with Def. Ex. 11D.) Stiebling

fails to demonstrate by a preponderance of evidence that Teakdecking's design and manufacture of the covers for the hatches and lazarette are defective or deviate from the industry standard.

During the years following the installation, Stiebling failed to properly maintain the new deck and allowed the caulking and sealant, used by Teakdecking to protect against leaks, to deteriorate.  (Vol. 2, p. 104.)  Naturally, in 2004, Stiebling discovered leaks on *Astraea.*  In May, 2004, Stiebling removed portions of the teak deck in an apparent effort to discover the source of the leaks.  (Vol. 1, pp. 72-75.)  The teak planks removed from *Astraea's* deck reveal the persistent durability and strength of the glue used to affix the deck.  Notwithstanding the passage of two years, the glue remained firmly affixed to both the fiberglass and the teak deck and showed no sign of deterioration.  Admittedly, small areas ("voids") existed where the glue failed to adhere to both the teak deck and the fiberglass, but intermittent "voids" are inconsequential to the integrity of the teak deck.  (Vol. 3, pp. 63-65, 160.) The evidence demonstrates that Teakdecking provided a teak deck more than reasonably fit for the purpose intended and in accord with industry standards.  Stiebling fails to prove by a preponderance of the evidence that the intermittent "voids" in the glue qualify as a material breach of either the contract or the warranty of workmanlike performance.

The preponderant evidence suggests that the leaks occurring at the margin boards and around the mainsail most likely resulted from deteriorating sealant or caulking.  These leaks at the margin and mainsail resulted from the failure to maintain *Astraea* subsequent to Teakdecking's installation of the deck.  The maintenance

- 6 -

necessary to protect and preserve a teak deck includes regular application of teak oil and replacement of the sealant and caulking. (Vol 2, p. 108.) Stiebling refused to perform regular maintenance on the deck after Teakdecking completed the installation of the teak deck. (Vol. 2, p. 104.)

## **Conclusions of Law**

Stiebling initiated this action for breach of a contract to install a teak deck on a sailing vessel. The statement of the case and the stipulated questions of fact and law describe this action as one for damages resulting from (1) the April 12, 2002, rainstorm that wet the deck of *Astraea*, (2) improper design and manufacture of the covers to hatches and a lazarette, and (3) failure to complete the installation contract.

At trial, Stiebling asserted new claims that Teakdecking breached both the installation contract and a warranty of workmanlike performance as a result of Teakdecking's failure to properly affix the teak deck and properly apply sealant and caulk to prevent leaks. In support, Stiebling presented new evidence of the condition of *Astraea* in May, 2004, including new leaks and deterioration of the teak deck and the sealant and caulking. Stiebling asserts that the evidence demonstrates Teakdecking's faulty workmanship and breach of contract.

The Court may, in the interest of justice, amend the pretrial stipulation. Local Rule 3.06(e). Even if the Court allowed the new claims, Stiebling proves neither breach of contract nor breach of an implied warranty of workmanlike performance in the installation of the teak deck. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914


(11th Cir.1999) (under Florida law, a breach of contract action requires (1) a valid contract, (2) a material breach, and (3) damages) (citing Abruzzo v. Haller, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992)); Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956) (the warranty of workmanlike conduct is "comparable to a manufacturer's warranty of the soundness of its manufactured product."); Chisholm v. UHP Projects, Inc., 205 F.3d 731, 742 n. 8 (4th Cir. 2000) ("The implied warranty of workmanlike performance applies to all work done by a contractor, such as a defendant who performs maintenance or repair services on a ship or vessel."); West v. Caterpillar Tractor Co., Inc., 504 F.2d 967, 969 (5th Cir. 1974) (breach of an implied warranty of merchantability requires a showing that the product manufactured by the defendant was not reasonably fit for the purposes for which it was sold and intended to be used, that the product was defective on the date of its delivery, and that the plaintiff incurred damages as a result of the alleged defect) (applying Florida law). Stiebling presented no evidence to support a claim that at the time of the installation Teakdecking failed to properly seal and caulk the margin boards or to properly affix the teak deck to *Astraea*. Preponderant evidence demonstrates that the small intermittent "voids" failed to render the deck defective. (Vol. 3, pp. 63-65, 160.) Stiebling establishes by a preponderance of the evidence neither a material breach of the installation contract nor a failure to perform in a workmanlike manner. The evidence demonstrates that Teakdecking installed a solid and watertight teak deck on *Astraea*. Further, any damage to *Astraea* resulted from Stiebling's failure to maintain the boat. Seguros Illimani S.A. v. M/V Popi P, 929 F.2d 89 (2d Cir. 1991) ("Even if found in

breach of the implied warranty, a [defendant] can escape liability upon a showing that the carrier's conduct prevents or hinders the [defendant]'s ability to perform in a workmanlike fashion . . . or where the [plaintiff] is 'best situated to adopt preventive measures.'") (citing Rodriguez v. Olaf Pedersen's Rederi A/S, 527 F.2d 1282, 1284-86 (2d Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976) and Lopez v. Oldendorf, 545 F.2d 836, 839 (2d Cir.1976)).

The evidence demonstrates only Stiebling's continued failure to maintain *Astraea* and fails to prove that Teakdecking installed a defective deck. Both a sailing vessel and a teak deck require continued maintenance, including application of teak oil and repair and replacement of sealant and caulking. Stiebling failed to maintain *Astraea* after Teakdecking installed the deck. Stiebling neither replaced sealant and caulking nor applied teak oil to the teak deck. (Vol. 2, p. 109. As Ms. Stiebling herself responded to questions about proper maintenance, "Oh, with this deck? I haven't done anything and don't intend to.")

Accordingly, the Court declines to allow amendment of the pretrial statement and declines to consider the additional evidence.[1] Stiebling improperly proffers for consideration evidence and claims that failed to appear in the pretrial stipulation. Stiebling provided Teakdecking no opportunity for discovery and no opportunity to defend against the additional claims. The joint pre-trial stipulation governs this action.

---

[1] The trial represents Stiebling's third attempt to introduce new evidence and new claims. On the eve of trial, Stiebling moved (Docs. 53, 61) both to amend the witness and exhibit list and to amend the complaint to present new evidence and new claims. Both motions were denied (Docs. 57, 65).

Local Rule 3.06(e) ("The pretrial statement and the pretrial order, if any, will control the course of the trial and may not be amended except by order of the Court in the furtherance of justice."); see also Royal Palace Hotel Associates, Inc. v. International Resort Classics, Inc., 178 F.R.D. 595, 597 (M.D. Fla.1998).

The record reveals that Teakdecking performed the installation of the teak deck on *Astraea* in a professional and workmanlike manner and without negligence. Teakdecking's failure to cover the deck of *Astraea* resulted in no material damage from the rainstorm.[2] The saturation level of the wood core of *Astraea* occurred over the lifetime of the boat and as a result of persistent neglect. (Vol. 3, pp. 54-55.) The moisture levels in the wood core of *Astraea* required years to accumulate and accumulation of moisture on *Astraea* antedates the installation of the teak deck by years. (Vol. 3, pp. 54-55.) The saturation level of *Astraea's* core resulted from neither exposure to the April, 2002, rainshower nor water absorption after the installation of the teak deck. The rainwater that accumulated on the deck of *Astraea* during the April, 2002, rainstorm caused neither permanent nor even consequential damage to the wood core of *Astraea*, already soaked as a result of prolonged neglect and exposure. (Vol. 3, pp. 54-55.)

---

[2] Stiebling provided a cover to protect the boat during the installation. The cover Stiebling provided comprised a "Visqueen" tarp stretched over a frame built from PVC pipe. (Vol. 1, pp. 60-61.) Teakdecking argues that any damage to *Astraea* that occurred during the rainstorm resulted from the inadequacy of the cover. If the evidence supported a claim that the April, 2002, rainstorm caused damage to the wood core of *Astraea*, the inadequacy of the cover provided by Stiebling would affect the apportionment of fault in favor of Teakdecking. Abrisch v. U.S., 359 F.Supp.2d 1214 (M.D. Fla. 2004) (under Florida law, if both parties are guilty of negligence, the negligence of the parties should be apportioned).

Teakdecking's design and manufacture of the hatch covers and lazarette top meet industry standards and satisfy the installation contract.  Even if the design and manufacture were faulty, the evidence demonstrates that Stiebling refused Teakdecking's good faith effort to correct any perceived defect.  Further, Teakdecking's failure to complete the punch list after the installation of the deck resulted from Stiebling's refusal to allow Teakdecking timely and reasonable access to the boat and not from any fault of Teakdecking.

Stiebling failed to establish negligence on the part of Teakdecking.  Teakdecking neither breached their duty nor caused harm to Stiebling.  <u>Janis v. Pratt & Whitney Canada, Inc.</u>, Nos. 604CV184ORL18DAB, 604CV1359ORL18KRS, 2005 WL 1307666 *2 (M.D. Fla. June 1, 2005) (under Florida law, to prove negligence a plaintiff must show that the defendant's breach of a legal duty owed to the plaintiff caused injury and damages to the plaintiff) (citing <u>Sexton v. U.S.</u>, 132 F.Supp.2d 967, 974 (M.D. Fla. 2000) and <u>Clampitt v. D.J. Spencer Sales</u>, 786 So.2d 570, 573 (Fla. 2001)).

Accordingly, Teakdecking breached neither the contract nor the warranty of workmanlike performance.  The Clerk is directed to enter a judgment in favor of Teakdecking on all counts.  The Clerk is further directed to (1) terminate any pending motion and (2) close the file.

ORDERED in Tampa, Florida, on June 27, 2005.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc:   U.S. Magistrate Judge
      Courtroom Deputy